No. 161.—R. W. VANCE *v.* M. A. COOPER et al.

In this case suit was brought to recover the amount of a note alleged to be lost or mislaid. The evidence admitted on trial, without objection, shows that the holder had received from the maker an amount of Confederate bonds, and had delivered the note to the maker, who shortly afterwards died; and the holder never had possession of the note afterwards. Held—That, having accepted the Confederate bonds, and delivered the note to the maker, amounted to an extinguishment of the note. That the delivery of the note to the maker at the time the bonds were received, rendered it certain that the bonds were not given as collateral security.

To enable a party to recover on a lost instrument, he must show by direct testimony, or by circumstantial evidence, supported by his oath, such a state of facts as render the loss probable. The oath of the attorney can not be substituted for that of the party. But if the attorney know of the loss, from his own knowledge, he is competent to establish the fact.

The failure to advertise the loss of a note within a reasonable time, will defeat the claimant in a suit to recover.

APPEAL from Tenth District Court, parish of Bossier. *Levisee,* J. *Looney & Wells,* for plaintiff and appellee. *Griffin & Turner,* for defendant and appellant.

LUDELING, C. J. This is a suit on a note alleged to be lost. There was judgment in favor of the plaintiff.

An examination of the evidence in the record convinces us that the judgment is erroneous. The allegations in the petition are, that the succession of Nathaniel A. Cooper is indebted to petitioner in the sum of four thousand eight hundred dollars and ninety-four cents, with interest thereon, from first of January, 1862. That the debt was evidenced by a note made by said Cooper, now deceased, "that sometime about the day Cooper offered to pay said note and interest, with Confederate States treasury bonds, which petitioner refused to receive in payment of said note and interest, but said Cooper then and there delivered to petitioner the amount of said note and interest, with the express understanding and agreement, that petitioner was to take said bonds, not as a payment of said note, but as collateral surety that said note would be paid. Petitioner avers that he has not said original note in his possession, and has diligently searched and inquired for said note, but can not find the same, and that said note is due and unpaid to petitioner. Petitioner further represents that at the time said note was executed, the said Cooper, in order to secure the payment thereof, executed his mortgage on the following described property."

The statements in the petition of themselves need explanation. Why should the debtor insist upon giving to his creditor collaterals for security, when the debt is already secured by a mortgage? Why should that creditor take, as security, Confederate treasury bonds, when he was unwilling to receive them in payment? Why was not the note in the possession of the creditor? He does not allege that it was lost, or explain why it was not in his possession.

The evidence in the record, however, sheds light upon the subject. J. A. Kelly, a witness whose testimony was taken by commission,

swears that the deceased presented Confederate notes to the plaintiff, who refused to take them as a payment, " that he refused to take them more than once as a payment," that the note was secured by a mortgage on the lands of N. A. Cooper. Witness further swears that the Confederate notes were taken as collateral security, and " that Cooper expressly said, that if the money did not prove to be good he would make it good." " This was about the first of May, 1863, at Cooper's residence."

On cross examination, this witness says, that at this transaction no one was present but the plaintiff, the deceased and witness. And in answer to the second cross question, " Did not the plaintiff deliver to N. A. Cooper the note ? What did he do with it ? " The witness said that " he put it in his desk."

George W. Sentelle, another witness, whose testimony was taken by commission, says : " I saw the note referred to once, which was about the last of April or in May, 1863, but a short time before the last illness of said Cooper. * * Said Cooper handed me the note, and requested that I should cancel it, stating at the same time that he had paid said R. W. Vance all that was due him, but desired to know of me what was necessary to cancel a mortgage he had given said R. W. Vance, when he drew said note," etc. He further says N. A. Cooper had said note, and placed it among some other papers of his, at the time referred to. I do not know what became of it afterwards. After his death, I was appointed one of the appraisers of his effects, and examined his papers, and have no recollection of seeing said note among his papers. The said R. W. Vance was his family physician during his last illness."

Mrs. Cooper testified as follows : " On the next day after the death of N. A. Cooper, the plaintiff, R. W. Vance, inquired of the wife of deceased for the notes which he (plaintiff) had held against the deceased, and had given them up to him. Plaintiff stated, at the same time, that the note had been paid, and that he only desired it to have the mortgage canceled ; and also stated that Mr. Cooper owed him nothing but a little doctor's bill. States that this conversation " took place in her presence, in 1863, on the next day after Mr. Cooper was buried." " The witness is the sister of the widow of the deceased, N. A. Cooper."

Isaac Cooper, a son of the deceased, says: " The plaintiff came to the house of the deceased the next day after the burial of the deceased, and said he wanted to arrange the papers of witness' father, the deceased; and that in looking through the papers of the deceased, N. A. Cooper, the plaintiff found the note, which he (plaintiff) had held against N. A. Cooper, and stated that the note had been paid, and that he (plaintiff) must have the note in order to have it canceled.

That he heard plaintiff state, after the death of his father, that he owed him (plaintiff) nothing but a small doctor's bill."

The evidence above was received without objection. We think it establishes an extinguishment of the note; and that the plaintiff has no right to the same. An amount of Confederate treasury notes, equal to the principal and interest of the note of N. A. Cooper, was given, in 1863, to the plaintiff, who delivered the note to the maker.

The fact that Cooper "expressly agreed to make the Confederate notes good, if the money did not prove to be good," did not prevent the extinguishment of the note. But we are not inclined to give any weight to the loose declarations, in a conversation at which the witness happened to be present, four or five years before the time he testified, made by a person since dead.

The Confederate notes were not received as collateral security, else the note would not have been given to the debtor.

The plaintiff must fail on other and more technical grounds.

He claims to be proceeding on a lost instrument. In order to prove the contents of this lost document, the law has wisely required that the loss shall be proved, either by direct testimony, or by such circumstances, *supported by the oath of the party*, as render the loss probable. The party, in this case, has failed to make the necessary oath. The oath of the attorney can not be substituted for that of the party, for reasons that are obvious. If he *know* of the loss, his evidence would satisfy the law; the loss would then be established by "direct testimony." If, on the contrary, he do not know the fact, he could only swear to what his client told him; and thus, the unsworn statement of the party would virtually be substituted for the oath of the party, required by art. 2258 C. C.

Another fatal defect is, the failure to advertise the lost instrument, "within a reasonable time." The note was made in April, 1860; in the spring of 1863 the note was in the possession of the deceased, the maker; in May, 1863, the maker of the note died. It is not alleged or shown when the note was lost. If lost at all, it must have been before it got back to the possession of the debtor, in April or May, 1863. Its loss was not advertised until twenty-first March, 1866, about three years after the death of the supposed debtor. There is a want of diligence thus manifested, which is inexcusable, if not suspicious. C. C. art. 2259.

It is, therefore, ordered, adjudged and decreed, that the judgment of the district court be avoided and reversed; and that there be judgment in favor of the defendant respecting the plaintiff's demand, with costs in both courts